Court, please call the next witness. 517-0476, Dollar General Corporation v. The Workers' Compensation Commission. Counsel, you may proceed. Thank you, Your Honor. May it please the Court, I'm Jim Teltorcer. I represent the appellate Dollar General Corporation. First off, Your Honors, I readily acknowledge this is a manifest of the weight of the evidence case. I know in my second argument regarding causation, in my brief, I brought up a de novo standard. I guess I am abandoning that argument, Your Honors. That's a good argument that you're abandoning that standard. Well, I'll leave it at that, Your Honor. And also, I guess I was just planning to really direct all my arguments today to the first issue about whether the accident, the finding that Mr. Wilson had an accident that arose on the course of the employment was against the manifest weight. And anything I mention about manifest weight on the second argument, I'll just leave, stand on my brief on that one. Your Honors, I guess in terms of stepping back and looking at the facts of this case, we have evidence in terms of Mr. Wilson, the petitioner himself, and also his testimony. He also offered testimony from two other witnesses. And then we have the testimony from the representative from Dollar General. Now, if you look at Mr. Wilson's testimony, it supports his case, be that as it may. Right, they found him to be credible, and they specified reasons, right? Well, the arbitrator said that, and the commission affirmed that decision. I guess, Your Honor, I guess I just... You're absolutely correct. The commission affirmed the arbitrator's decision, yet the commission didn't actually view Mr. Wilson to testify. But correct, they did find his testimony to be credible. That was exactly their finding, Your Honor. Okay. But I guess also, too, in addition to Mr. Wilson's testimony, I guess also there's evidence in terms of, I guess, Mr. Wilson's actions. And I guess what I mean by that, Your Honor, is that it was undisputed that Mr. Wilson had a longstanding low back problem, many, many years. He testified that he was in pain all the time, and leading up to the date of the accident, he was regularly on narcotic pain medication to address that. He doesn't dispute that, does he? Correct. He does not dispute that, Your Honor. And I guess what I'm trying to say by his action is that he alleges that he was injured on August 21st of 2014, but then he waits, you know, over a week before he reports the injury to his supervisor. Well, that was disputed. The supervisor said it wasn't documented, and he said he did report it. Well, I guess, Your Honor, it was disputed. But I would submit that Mr. Wilson also said he sent an email. We were able to produce an email that came on August 29th. All right. So that's disputed. But let me ask you this. Who is Schott? I see in the record. Who is Schott? That's C-H-O-T-T. That's a coworker, right? Yes, it is, Your Honor. So Schott testified, having seen the claimant in severe pain, and he was bent over while walking at work in the days following the August 22nd, 2014 accident. Wouldn't that be some form of cooperation? It would be, but for the fact that during the post-accident investigation by Dollar General, Ms. Schott also prepared a written statement that was exactly contrary to it, and that was the puzzling part about her testimony. And in my humble opinion, that neutralized her testimony, Your Honor. So she talked to the employee's supervisors. Her supervisors, you decided to modify her statement, really? Well, that's what I would submit, Your Honor. Okay. And then, and also to follow up on one last thought, in regarding to Mr. Wilson, that he also waited, you know, 10 days before he sought initial medical care, which again would seem odd, you know, given the fact that he had an injury, that he would wait that long. And that part is undisputed, Your Honor. Then going down the rest of the list, Mr. Wilson's wife also testifies. I mean, she didn't witness the accident. Now she talks about that his appearance in terms of his pain was quite different. On the other hand, you know, she also acknowledged that Mr. Wilson was in pain, again, constantly leading up to the time of the accident. Then we have a testimony from Michelle Schubert from Dollar General. Now, she went ahead and did the post-accident investigation, went down and interviewed a couple of the co-workers, looked at the store video. She went ahead and testified that she saw the video. She didn't see that the accident occurred. On the other hand, I freely acknowledge, Your Honor, that the video wasn't produced. That always causes heartburn for a defense counsel, that's for sure. It also indicates that the video didn't cover the entire storage room, and there were multiple racks that you rolled water on. That is well, Your Honor. I mean, yes, that is exactly right. There was a blind spot in the security system. I always find it strange that most of the room's covered, but these accidents always happen in the blind spot. But be that as it may, that was the testimony. That was the fact, Your Honor. Counsel, you're good about acceding to things that should be undisputed. But would it be fair to say, and obviously you're pointing out specific evidence that you believe tips the scale on the manifest weight test, but isn't it also fair to say that this case essentially turns on the Commission's assessment of the credibility and believability of the witnesses and the weight of the evidence? Isn't that what this case boils down to? There's no smoking gun here, is there? No, there is no smoking gun, Your Honor. And I guess I would submit, in looking at the entire evidence, I mean, Mr. Wilson's testimony is really the only evidence that would support this case, Your Honor. And now, I mean, I really acknowledge that manifest weight standard, I have a heavy burden to carry on that, no question about it. I guess I would just respectfully submit that I guess in terms of manifest weight, that doesn't mean that there has to be no evidence. I guess I would suggest that given the evidence that was presented, we would take the position that Mr. Wilson's evidence wasn't sufficient. Well, his testimony as to the accident is consistent with the medical records from Sparta Community Hospital. He told them the same thing. And then on September 3rd, he goes to Dr. Wolf and tells him the same thing. So this man's story of how his back was injured and the pop that he felt when he moved his car is consistent. I mean, there's no deviation. That is true. Of course, I guess the only thing I would say to that, Your Honor, is that why take Mr. Wilson over 10 days to go ahead and seek medical care? If the injury occurred and it was that severe, that would seem just, I would submit that that was a factor that would counter against that. Let me stop you for just a second with regard to his co-worker, Ms. Schott. I think you characterized it as saying that when she submitted a written statement, after she had made the statements that she witnessed this gentleman in severe pain, bent over walking through the store shortly after the accident, that she changed her testimony. In fact, I don't think she changed her testimony in regard to what she had said she saw as far as, you know, depicting the gentleman in pain. I mean, she simply said in the written statement that she didn't recall him telling her that he hurt his back on August 21st, and she was uncertain what day to claim it told her anything. That's different than her saying, no, I actually didn't see him walking in pain. So as far as the credibility of Ms. Schott, I don't know that that necessarily destroys her credibility because she submitted the written statement, because it doesn't address what she claimed to have seen in her statement with regard to that, unless I'm missing something in regard to her written statement. Well, I guess, Your Honor, I felt that, and perhaps I'm missing something, but I felt that her testimony before she was impeached with that written statement actually kind of far exceeded what was on the written statement. So I still think it did impeach her testimony and her credibility, Your Honor. I think I've gone ahead and just covered all the points that I wanted to say, Your Honor, unless you have any more questions. All I would say is that we would just respectfully ask that the decision of the commission be reversed and that benefits be denied. Thank you for your time this morning. You'll have time to reply if you choose. Thank you. Counsel, you may respond. Thank you. May it please the Court, my name is Christopher Gelbmacher on behalf of the employee respondent, Wayne Wilson. I won't even get into the law and the manifest way we know what that is. I would agree wholeheartedly with Justice Hudson when he said this really comes down to credibility and the determinations of credibility and the level of credibility of my client. I've possibly not run into a more credible claimant in my time, 20 years as an attorney. Let's take judicial notice of that. Thank you. So I think it's important to point out what Arbitrator Lindsay and the commission found as far as the credibility, because they didn't simply say that the witness was credible. They said he was very credible but specified that it was found in part based upon hearing his testimony, in part based upon the medical evidence and finding more of the totality of the circumstances. Who heard his testimony? Arbitrator Lindsay. Oh, Arbitrator Lindsay. Arbitrator Lindsay. So it's not simply a statement that he was credible. It was a multi-tiered statement of why she found him to be credible. And what was the cooperation again? Was there some cooperation for his testimony, not suggesting that he needed it, but was there cooperation? And that's absolutely. It's not simply his testimony here that's proving his credibility. It's the medical evidence in addition to that testimony. As Justice Hoffman was pointing out, the timeline and the evidence in the medical records when he begins seeking his treatment ties directly into the statements he made about his injury. Further, we have, and I was very happy to find this, 15 days before this accident, he's seeing his regular doctor, Dr. Wolf, a doctor who he's seen for many years. And Dr. Wolf's statements are highly enlightening about his condition 15 days before this accident, saying that he feels well. His chronic neck and back pain were at baseline. He was functional on his current medications, working as a store manager for Dollar General. And as opposed to returning in three or six months, for the first time in a long time, he tells Mr. Wilson at that time, come back in a year. That's how confident he was in Mr. Wilson's condition 15 days before this occurrence. In addition, we have corroborating testimony of Mrs. Schott, who said, I saw him in the store doing his job before and after this injury, and after this injury, he was in severe pain. One quick question. He points to a fact, apparently after the employer talked to him, he changed a little bit. What do you make of that? I agree with what Barbara Barberis said. And I don't think it does contradict. I don't think her statement does contradict when she says this is what I viewed compared to what she was asked to put down when the regional manager comes up and says, hey, you need to put a statement down on paper right now. And then she wrote what she wrote. But I think her testimony overcomes that. And it doesn't necessarily contradict it as well. In essence, you're saying, look, there's credibility findings in favor of the claimant. There's certainly sufficient evidence when you consider it's corroborated. So an opposite conclusion is not apparent. Is that your argument? That's exactly it. And I will rest on that and ask the Court to affirm the decision. Thank you, counsel. Counsel, you may reply. Your Honor, I think I'll just stick with where I'm at. Thank you. I appreciate your time this morning. Thank you, counsel. Both the arguments in this matter will be taken under advisement and a written disposition shall issue.